IN THE UNITED STATES DISTRICT COURT

FOR THE WESTERN DISTRICT OF WISCONSIN

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

DEMARIO JACKSON,

                Plaintiff,

v.

RYAN HOLZMACHER, JAMES LABELLE,
TANYA BONSON, SUSAN PETERS,
SCOTT HOFTIEZER, KARL HOFFMAN,
BURTON COX and LISA ALLEN,

                Defendants.

OPINION AND ORDER

16-cv-828-bbc

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

Pro se plaintiff and prisoner Demario Jackson is proceeding on a claim that prison officials at the Wisconsin Secure Program Facility are violating his rights under the Eighth Amendment by refusing to provide treatment for his gynecomastia, a painful swelling of his breast tissue. Specifically, plaintiff alleges that defendants have refused to approve breast reduction surgery recommended by an off-site physician and have not prescribed effective pain medication. Now before the court are the motions for summary judgment filed by defendant Susan Peters, dkt. #46; defendant Tanya Bonson, dkt. #56; and defendants Lisa Allen, Burton Cox, Karl Hoffman, Scott Hoftiezer, Ryan Holzmacher and James LaBelle, dkt. #61. On March 20 and April 10, 2018, after the parties completed briefing the motions for summary judgment, plaintiff filed two motions requesting assistance in recruiting counsel. Dkt. ##74, 75.

For the reasons explained below, I find that plaintiff has failed to show that any of

the defendants acted with deliberate indifference in denying the surgery he requested for his gynecomastia. Therefore, the motions for summary judgment filed by defendants will be granted and plaintiff's motions for assistance in recruiting counsel will be denied as unnecessary.

From the parties' proposed findings of fact and the evidence in the record, I find the following facts to be material and undisputed unless otherwise noted.

UNDISPUTED FACTS

A. The Parties and Background

Plaintiff Demario Jackson was transferred to the Wisconsin Secure Program Facility on February 18, 2015. Since childhood, plaintiff has suffered from gynecomastia, which is a benign increase of the glandular tissue of the male breast that is often caused by obesity but may be the result of an increase in the ratio of estrogen and androgen hormone activity.

Defendant Dr. Ryan Holzmacher was the medical director of the Department of Corrections's Bureau of Health Services from March 24, 2014 to May 15, 2017, and currently serves as the acting medical director on a limited term basis. His responsibilities include overseeing the general health of the prison inmate population with the help of the associate medical directors, developing policies and procedures that conform with community standards of care and reviewing and approving requests for testing, consultations, non-formulary medications and procedures for inmates. Department of Adult Institutions Policy #500.10.12 requires prior authorization for "Class III" medical care,

which includes non-urgent conditions and surgical procedures that can be performed at the convenience of the physicians and institution. Holzmacher is a member of the "Class III Committee," which determines whether proposed medical treatment for certain inmates is medically necessary, and chairs weekly meetings of the committee.

Defendant Dr. Scott Hoftiezer has been a physician at the Dodge Correctional Institution since 2002 and is an associate medical director with the Bureau of Health Services. As an associate medical director, Dr. Hoftiezer attends and participates in Class III Committee meetings.

Defendants Dr. Karl Hoffman, Dr. Burton Cox and Dr. Lisa Allen are physicians employed by the Wisconsin Department of Corrections and were members of the Class III Committee that denied plaintiff's surgery.

Defendants Tanya Bonson and Susan Peters are advanced practice nurse prescribers employed by Maxim Physician Resources, Inc. to work at state correctional facilities on a contract basis. Bonson worked on assignment to the Wisconsin Secure Program Facility from May 31, 2016 to May 31, 2017 and treated plaintiff during that period. Peters worked at the Green Bay Correctional Institution at all times relevant to this lawsuit and had no involvement in the medical care or treatment of plaintiff.

Defendant James LaBelle has been a regional nursing coordinator with the Bureau of Health Services since 2012, and his primary responsibility is serving as the reviewing authority for inmate complaints related to the provision of healthcare in the state correctional institutions. Defendant Ellen Ray is an inmate complaint examiner.

B. <u>Department Policies Regarding Outside Medical Care and Surgeries</u>

If an outside consulting physician makes recommendations to the institution's treating physician concerning a course of treatment for an inmate, the treating physician may adopt or reject the recommendations based on his or her own medical judgment, security and other institutional concerns. The inmate's treating provider may request authorization for Class III or non-urgent medical care by submitting a "DOC-3436, Prior Authorization for Non-Urgent Care" form to the medical director and the Class III Committee. The Class III Committee reviews requests for chronic opioid treatment and certain types of surgeries to determine if the treatment is medically necessary and meets the community standard of care. The medical director has the final authority to approve physician and inmate requests for surgery. As medical director, defendant Holzmacher may send a case to the Class III Committee for review if he would like a second opinion, and the committee may send the request back to Holzmacher for final approval if they feel his input is necessary.

During Class III Committee meetings, the inmate's attending practitioner presents the case to the committee members who may ask questions, give opinions, discuss alternatives, discuss whether to approve a proposed treatment, suggest other acceptable alternatives or recommend continuation of the current therapy, if any. Any practitioner who attends a committee meeting to present a case or to listen is considered a de facto committee member. Nurse practitioners attend committee meetings to present cases of inmates who

4

are requesting proposed treatment that must be approved by the committee. Because of their clinical schedules, nurse practitioners often are excused from committee meetings after they have presented their cases.

In most cases, the committee agrees on a course of action based on a consensus, but if necessary, a vote is taken. According to defendant Holzmacher, if he asks the committee for an opinion, he accepts its decision. If the inmate is dissatisfied with the response, the inmate may resubmit a request anytime his condition changes or he may appeal the decision through the Inmate Complaint Review System.

### C. Plaintiff's Treatment and Requests for Surgery

When plaintiff arrived at the institution in February 2015, he weighed 239 pounds. In June 2015, medical staff advised him that losing weight would help his condition. On October 20, 2015, Dr. Syed referred plaintiff to the Gundersen Clinic for a mammogram and ordered lab work to assess his hormone levels. That same day, at Dr. Sayed's direction, Jolinda Waterman, the health services manager at the prison, submitted a DOC-3436 form for prior authorization of breast reduction surgery for plaintiff.

Defendant Holzmacher reviewed the prior authorization request and denied plaintiff's surgery as not medically necessary based on the medical community standard, medical research and his own professional opinion. According to Dr. Holzmacher, the clinically accepted indications for breast reduction surgery in men include a mass with a possible malignancy, refractory pain not treatable with conservative measures and significantly

5

limiting functional ability. Dr. Holzmacher found that none of these factors were present in plaintiff's case because there was no evidence that plaintiff suffered functional limitations and plaintiff had not yet tried losing weight or using conservative treatment measures like a compression shirt.

Laboratory testing performed on November 5, 2015 showed that plaintiff's hormone levels were within normal range, meaning that hormonal imbalance was not the cause of plaintiff's gynecomastia. On December 23, 2015, Dr. John Pape at Gundersen e gave plaintiff a mammogram to rule out cancer or another life threatening condition. The mammogram showed that plaintiff had bilateral gynecomastia but that his breast tissue was almost entirely fatty, non-cancerous and non-life threatening. Dr. Pape recommended a review of plantiff's medications and consideration of breast reduction surgery. Defendant Dr. Cox reviewed the recommendation on January 11, 2016.

Plaintiff saw a nurse for pectoral pain on February 5, March 1 and April 4, 2016 and asked about a bra and breast reduction surgery. He was placed on the wait list to get consent from the Class III Committee for surgery. The nurse told plaintiff to lose weight, avoid positions and activities that might aggravate his condition and take Tylenol for pain.

On April 26, 2016, advanced nurse practitioner Cynthia Griffin noted plaintiff's mammogram results and Pape's recommendation that plaintiff have surgery. At that visit, Griffin prescribed benzoyl peroxide for acne and sores on his chest. Plaintiff weighed 212 pounds, having lost about 20 pounds since arriving at the institution. Waterman re-submitted a prior authorization form on Griffin's behalf for plaintiff's breast reduction

6

surgery, but Dr. Holzmacher denied the request on April 27, citing the same reasons that he gave for his previous denial.

Plaintiff saw a nurse on four different occasions in May 2016, complaining of pain. On May 13, a nurse scheduled his case for a file review. On May 25, a nurse offered plaintiff a sports bra for pain management, but plaintiff refused to wear one. On May 31, defendant Bonson sought prior authorization for a bilateral mastectomy for plaintiff, noting that plaintiff stated his breasts were quite painful, he was a lifetime resident of the institution, his condition interfered with his image, caused discomfort and pre-existed his incarceration; he faced a risk of possible infection; surgery may relieve his pain and improve his body image; and his only alternative was to wear a bra. Defendant Holzmacher referred plaintiff's case to the Class III Committee for their opinion.

Defendant Bonson presented plaintiff's case to the Class III Committee on June 8, 2016 by providing significant details about his condition, answering questions and advocating on plaintiff's behalf for surgical intervention. Bonson was not a voting member of the committee on June 8, 2016, and she did not vote on whether to approve surgery for plaintiff. (Plaintiff attempts to dispute this fact by pointing to the state defendants' affirmative response to plaintiff's second request for admissions that "All the Class III Members voted to deny Jackson the surgery." However, in response to a subsequent request for admission about the identity of the Class III Committee members who denied plaintiff's surgery, the state defendants admitted that the committee members included Hoffman, Cox and Allen and that they could not answer for defendants Peters and Bonson, who were

represented by separate counsel. Dkt. #71, exh. #1, ¶¶ 1-2.) Bonson also did not have the authority to override the committee's decision.

Around June 10, 2016, the Class III Committee denied the surgery on the ground that plaintiff's condition was benign. In Dr. Hoftiezer's professional opinion, breast reduction surgery was not medically necessary because there was no evidence that the pain was causing significant dysfunction in plaintiff's daily life. According to Dr. Hoftiezer, management of gynecomastia begins with the simplest and least invasive steps, including observation, stopping causative medications and treating underlying medical problems. If gynecomastia is not resolved within three months with these measures and the patient has pain and tenderness, a brief trial of tamoxifen can be effective to reduce the breast tissue and bring relief of tenderness. Generally, the Department of Corrections does not treat gynecomastia with surgery when it is not medically indicated as necessary. Risks associated with gynecomastia surgery include sloughing of tissue due to compromise of the blood supply, contour irregularity, hematoma or seroma formation and numbness of the nipple-areolar area. In the absence of breast cancer or infection, breast reduction surgery is considered an elective surgery in Hoftiezer's opinion. After considering plaintiff's condition, the committee recommended that plaintiff try wearing a support garment and take tamoxifen for four months. Plaintiff received the medication on June 13, 2016.

On October 7, 2016, Bonson again sought prior authorization for plaintiff's surgery on the ground that the four-month trial of tamoxifen had not worked. The Class III Committee held a hearing on October 12, 2016. Defendant Dr. Hoftiezer chaired the

committee meeting, and defendants Hoffman, Cox, Allen, Bonson and Peters were in attendance. Bonson presented plaintiff's case to the committee but she did not vote on whether to approve plaintiff's surgery. Defendant Peters attended the October 12 meeting by telephone for the sole purpose of presenting the case of a Green Bay Correctional Institution inmate who was requesting a hernia repair. She has no recollection of participating in the discussion of any other inmate's case at that meeting and did not vote on whether to approve plaintiff's surgery. Defendant Hoftiezer, who recorded the names of the attendees, did not make any notes about who left the meeting before its conclusion and has no recollection whether Peters participated in the discussion or decision regrading plaintiff's surgery.

At the October 12 meeting, the committee determined that plaintiff's surgery was not medically necessary because plaintiff had not yet tried wearing a support garment to reduce tenderness and discomfort. Although plaintiff had concerns about wearing a support garment, he told Bonson that he was willing to try it if he could see it first. Plaintiff received and tried wearing a compression shirt around November 9, 2016.

In November 2016, Bonson prescribed plaintiff ibuprofen and acetaminophen for one year to be taken as needed. When plaintiff complained of continuing pain, Bonson changed his medication to Meloxicam and acetaminophen in December 2016. In February 2017, at plaintiff's request, Bonson discontinued the Meloxicam and reinstated the ibuprofen for plaintiff's pain. Bonson's assignment at the institution ended on March 31, 2017.

On October 27, 2017, medical staff prescribed plaintiff Tramadol, an opioid pain

9

medication, and recommended submitting another request for surgery for plaintiff to the Class III Committee. (There is no evidence that the request was ever made.) Plaintiff was wearing a compression shirt at that visit. Although plaintiff has continued to complain about pain, the committee did not receive any other prior authorization request forms for his breast reduction surgery.

On January 22, 2018, plaintiff reported to medical staff that the Tramadol was alleviating his pain, and he was not wearing a compression shirt at that visit. That same day, Nurse Practitioner McArdle presented requested approval from the Class III Committee for plaintiff's continued use of Tramadol for pain management. The committee denied the request and recommended weaning plaintiff off Tramadol and encouraging his use of the compression shirt.

### D. Plaintiff's Inmate Complaint

Defendant Ray reviewed plaintiff's inmate complaint WSPF-2016-9242 regarding the committee's denial of his surgery and spoke with Waterman. Relying on Waterman's responses, the medical documentation and the professional judgment of the medical staff, Ray determined that the complaint should be dismissed. Defendant LaBelle reviewed plaintiff's complaint and deferred to the decision of Dr. Holzmacher and the committee.

## OPINION

Plaintiff's medical care claims are governed by the Eighth Amendment. A prison

official may violate this right if the official is "deliberately indifferent" to a "serious medical need." Estelle v. Gamble, 429 U.S. 97, 104-05 (1976). At least for purposes of summary judgment, defendants concede that plaintiff has a serious medical need. Therefore, the question is whether plaintiff has submitted enough evidence from which a reasonable jury could conclude that any of the defendants acted with "deliberate indifference" toward his serious medical need. Gomez v. Randle, 680 F.3d 859, 865 (7th Cir. 2012).

"Deliberate indifference" means that the officials are aware that the prisoner needs medical treatment, but are disregarding the risk by consciously failing to take reasonable measures. Forbes v. Edgar, 112 F.3d 262, 266 (7th Cir. 1997). To be considered "deliberately indifferent," an official "must both be aware of the facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." Snipes v. Detella, 95 F.3d 586, 590 (7th Cir. 1996). Inadvertent error, negligence, gross negligence and ordinary malpractice are not cruel and unusual punishment within the meaning of the Eighth Amendment. Vance v. Peters, 97 F.3d 987, 992 (7th Cir. 1996). "A prisoner's dissatisfaction with a doctor's prescribed course of treatment does not give rise to a constitutional claim unless the medical treatment is 'so blatantly inappropriate as to evidence intentional mistreatment likely to seriously aggravate the prisoner's condition.'" Snipes v. DeTella, 95 F.3d 586, 592 (7th Cir. 1996); see also Greeno v. Daley, 414 F.3d 645, 653 (7th Cir. 2005). Further, a medical provider cannot be held liable for deliberate indifference under 42 U.S.C. § 1983 unless he or she was personally involved with the prisoner's medical care or treatment. Gayton v. McCoy, 593 F.3d 610, 612 (7th Cir.

11

2010) (granting summary judgment for defendants who did not know about plaintiff's condition or requests for medical attention); Aponte v. Suliene, Case No. 14-cv-132-jdp, 2016 U.S. Dist. LEXIS 116843, at *20- 21 (W.D. Wis. Aug. 30, 2016) (granting defendant's motion for summary judgment because defendant was not personally involved in scheduling or allegedly depriving the plaintiff of an earlier off-site appointment for staple removal).

I will discuss the alleged actions of each of the defendants separately.

### A. Defendants Holzmacher, Hoftiezer, Hoffman, Cox and Allen

Defendant Holzmacher denied plaintiff's prior authorization requests for breast reduction surgery in his role as medical director in October 2015 and April 2016, and defendants Hoftiezer, Hoffman, Cox and Allen are all physicians who served on the Class III Committee that voted not to approve plaintiff's surgery in June and October 2016. To prove that these defendants acted with deliberate indifference in making their decisions not to approve plaintiff's surgery, plaintiff must show that their decisions were "such a substantial departure from accepted professional judgment, practice, or standards, as to demonstrate that [defendants] actually did not base the decision on such a judgment." McGee v. Adams, 721 F.3d 474, 481 (7th Cir. 2013) (internal citations omitted). See also Holloway v. Delaware County Sheriff, 700 F.3d 1063, 1074 (7th Cir. 2012) ( prison health care professional "is free to make his own, independent medical determination as to the necessity of certain treatments or medications, so long as the determination is based on the

physician's professional judgment and does not go against accepted professional standards."). Plaintiff has not presented any evidence to show that Dr. Holzmacher or any of the voting members of the committee exercised medical judgment that fell below accepted professional standards.

The undisputed facts show that Dr. Holzmacher found that none of the clinically accepted indications for breast reduction surgery were present in plaintiff's case. Testing performed on plaintiff confirmed that he did not have a cancerous mass, and Holzmacher reasonably noted that weight loss was an appropriate treatment. Holzmacher also found that surgery carried its own risks and that plaintiff had not yet used a support garment, which could obviate the need for a surgery. In addition, Dr. Holzmacher referred the request to the Class III Committee so that other physicians could consider plaintiff's case and provide any suggestions they had.

Committee members Hoftiezer, Hoffman, Cox and Allen agreed with Holzmacher's assessment, and in accord with the standard of care, recommended that plaintiff first exhaust more conservative measures, including taking a four-month course of tamoxifen and wearing a supportive garment. Although plaintiff complains that the tamoxifen and compression shirt were ineffective, the undisputed facts show that he had not tried these measures when the committee made its decision in June 2016. Although the committee again voted not to approve the surgery in October 2016, after the tamoxifen was shown to be ineffective, their stated reason for the denial was that plaintiff had yet to try wearing a compression shirt. The undisputed facts confirm that plaintiff did not try using the compression shirt until

13

November 2016, and there is no evidence that the committee reviewed his need for surgery after that time. The committee did review and discuss plaintiff's need for opioid pain medication in January 2018, but it determined that plaintiff's continued use of narcotics was not advisable and that he should regularly wear the compression shirt, which he had not yet been doing.

Although plaintiff may disagree with Holzmacher's and the committee's recommended course of treatment, he has not shown that their medical judgment substantially departed from professional standards. Therefore, the motion for summary judgment filed by defendants Holzmacher, Hoftiezer, Hoffman, Cox and Allen will be granted.

### B. Defendants Bonson and Peters

Plaintiff bases his deliberate indifference claim against defendants Bonson and Peters on their attendance at one or more of the Class III Committee meetings at which his surgery was denied. However, he has failed to present any evidence showing that Bonson and Peters participated in the decision to deny his surgery or had any authority to override the decisions of the medical director and the Class III Committee, who are given the final say on such matters under department policy. Plaintiff does not dispute the fact that Bonson submitted paperwork for prior authorization for his surgery on more than one occasion and advocated for his surgery at two committee meetings. He also does not dispute the fact that Peters never treated him and only participated in the October 2016 committee meeting to present

14

the case of another prisoner, leaving the meeting before plaintiff's case was discussed and voted on. Without more, plaintiff cannot show that defendants Bonson and Peters had any personal involvement in the denial of his surgery. Further, even if plaintiff had established that there was a question of fact with respect to whether Bonson and Peters voted at the committee meetings, these defendants are entitled to summary judgment for the same reasons as the state physician defendants.

Although plaintiff also states in one of his briefs that Bonson gave him ineffective pain medication, he has not presented any evidence from which a jury could infer that Bonson's treatment of his pain fell below the standard of care. The undisputed facts show that Bonson saw plaintiff on several occasions for his pain while she was working at the institution, prescribed pain medication and made adjustments to those medications as needed. Accordingly, defendants Bonson and Peters are entitled to summary judgment.

### C. Defendants Ray and LaBelle

Defendants Ray and LaBelle reviewed and denied plaintiff's inmate complaint regarding the denial of his surgery. However, neither of these individuals was responsible for plaintiff's medical care and both were entitled to rely on the expertise of the physicians who reviewed plaintiff's case. Burks v. Raemisch, 555 F.3d 592, 594-96. (7th Cir. 2009) (institution complaint reviewer can rely on others within institution to perform tasks designated to their expertise). In addition, because plaintiff has failed to show that any of the medical providers with the authority to make a decision about his surgery acted with

15

deliberate indifference, there is no ground upon which to hold either Ray or LaBelle liable. Therefore, they are also entitled to summary judgment.

### D. Motions for Assistance in Recruiting Counsel

After the parties completed briefing the motions for summary judgment in this case, plaintiff filed two motions for assistance in recruiting counsel, stating that he has no legal experience, "limited competency" and limited access to a law library and that he will require assistance in presenting evidence and cross examining witnesses at trial. Because I have found that all of the defendants are entitled to summary judgment, there will be no trial in this case. However, even if I construed plaintiff's motions as request for assistance in recruiting counsel for purposes of summary judgment, *given* the evidence discussed above, counsel would not have made a difference in this case. Therefore, plaintiff's motions will be denied as unnecessary.

### ORDER

IT IS ORDERED that

1. The motions for summary judgment filed by defendant Susan Peters, dkt. #46; defendant Tanya Bonson, dkt. #56; and defendants Lisa Allen, Burton Cox, Karl Hoffman, Scott Hoftiezer, Ryan Holzmacher and James LaBelle, dkt. #61, are GRANTED.

2. Plaintiff Demario Jackson's motions for assistance in recruiting counsel, dkt. ##74 and 75, are DENIED.

3. The clerk of court is directed to enter judgment in favor of defendants and close this case.

Entered this 18th day of April, 2018.

BY THE COURT:

/s/

_____
BARBARA B. CRABB
District Judge